IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TANYA WILLIAMS | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| AMERICAN HERITAGE CREDIT UNION | : | NO. 23-4583 |

**MEMORANDUM**

**Padova, J.** **August 17, 2026**

Plaintiff has brought this employment discrimination action against her former employer, American Heritage Credit Union, asserting claims pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq.; 42 U.S.C. § 1981, and the 2010 Dodd-Frank Wall Street Reform and Consumer Financial Protection Act, 12 U.S.C. § 5567 (the "Dodd-Frank Act"). Defendant has filed a Motion for Summary Judgment seeking judgment in its favor as to all counts of the Complaint. For the reasons that follow, we grant the Motion in part and deny it in part.

## I. FACTUAL BACKGROUND

Plaintiff began to work for Defendant in October 1992 as a Teller. (Pl. Dep. (Docket No. 21-4) at 36-37.) She was made Quality Control Supervisor in 2000 and Quality Control Manager in 2004. (Id. at 40, 44.) She held the Quality Control Manager position for 14 years before receiving another promotion. (Id. at 44, 51-53.) During her employment with Defendant, Plaintiff saw Caucasian employees with less experience than she had, including individuals she had trained and supervised, promoted to higher level positions. (Pl. Aff.[1] (Docket No. 24-11) ¶¶ 3, 5.)

[1] Defendant asks us to disregard Plaintiff's Affidavit on the grounds that it directly contradicts her deposition testimony and her response to Defendant's statement of Additional Facts. Defendant also argues that we should disregard Plaintiff's Affidavit because it is self-serving and such affidavits cannot be used to manufacture a factual dispute. However, "'[a] single, non-conclusory affidavit or witness's testimony, when based on personal knowledge and directed at a material issue, is sufficient to defeat summary judgment,' even when 'self-serving.'" Daimler

In June 2014, after Plaintiff had been employed by Defendant for 22 years and had been the Quality Control Manager for 10 years, Defendant's then Chief Operating Officer ("COO"), Scott McCaw, told Plaintiff that she would receive a raise because she was a valued employee. (Id. ¶¶ 6-7.) The next day, Defendant announced that eight Caucasian employees, all of whom had less tenure and management experience with Defendant than Plaintiff had, were being promoted to Assistant Vice President ("AVP"), Executive, and Management positions. (Id. ¶¶ 8-9.) Plaintiff sent an email to Defendant's Senior Vice President ("SVP") of Human Resources ("HR"), Vice President ("VP") of Lending, and COO asking why she had not been considered for promotion. (Id. ¶ 10.) Defendant's Chief Executive Officer ("CEO"), Bruce Foulke, subsequently met with Plaintiff, and Plaintiff asked him why she had not been considered for promotion. (Id. ¶ 12.) Foulke responded that Plaintiff was Defendant's "highest paid level III manager." (Id.) Plaintiff remained in the Quality Control Manager position for another four years without a promotion while Caucasian employees with less tenure and management experience were promoted. (Id. ¶ 13.)

In 2018, during her annual review period, Plaintiff asked Scott McKim, Defendant's Chief Lending Officer ("CLO"), why she wasn't given an AVP or VP position, even though her department was larger than other departments headed by AVP/VP-level employees. (Id. ¶ 20; Pl. Dep. at 54.) McKim agreed to re-evaluate Plaintiff's job title and she was thereafter promoted to

---

v. Moehle, No. 23-2611, 2025 WL 1355138, at *4 (3d Cir. May 9, 2025) (quoting Paladino v. Newsome, 885 F.3d 203, 209 (3d Cir. 2018)) (internal quotation omitted) (citation omitted). "But self-serving testimonial evidence has its limitations. As relevant here, conclusory testimonial evidence cannot defeat summary judgment." Id. (citation omitted). "Testimonial evidence is conclusory if it fails to set 'forth specific facts that reveal a genuine issue of material fact' or sets forth opinions and conclusions rather than specific factual assertions." Id. (quoting Kirleis v. Dickie, McCamey & Chilcote, P.C., 560 F.3d 156, 161 (3d Cir. 2009)). We rely on Plaintiff's Affidavit only to the extent that it sets forth facts and does not contradict her deposition testimony.

AVP of Quality Control. (Pl. Aff. ¶ 21; Pl. Dep. at 52-53.) In 2020, Defendant's SVP of Consumer Lending, Bryan Eichenbaum, became Plaintiff's direct supervisor. (Pl. Dep. at 57; Eichenbaum Aff. (Docket No. 21-6) ¶ 1.)

In March 2021, Plaintiff submitted a letter to Flora Caranci, Defendant's then SVP of HR, raising specific concerns about racially disparate treatment in Defendant's promotions. (Pl. Dep. at 123-24; Pl. Dep. Ex. 33 (Docket No. 21-4) at 372; Belser Dep. (Docket No. 21-7) at 39.) Kristine Belser, Defendant's new SVP of HR responded a month later, denying that discrimination played any role in promotions. (Pl. Dep. Ex. at 373-74.)

In November 2021, Clare Pfeil, who Plaintiff identifies as a white employee, was promoted to VP of Electronic Funds Services.[2] (Pl. Aff. ¶ 28; Pl. Dep. at 160-61.) Plaintiff was not considered for promotion, even though she led a larger department with more employees and responsibilities and had been employed by Defendant longer than Pfeil. (Pl. Aff. ¶ 29; Pl. Dep. at 161.) On March 4, 2022, Plaintiff sent an email to Belser raising concerns about race discrimination in promotions, career advancement, and acts of retaliation that she had experienced. (Pl. Dep. Ex. 36 at 379-80.) Belser rejected Plaintiff's discrimination claims by email on April 16, 2022. (Pl. Dep. Ex. 39 at 386-91.) On July 13, 2022, Plaintiff dual filed a Charge of Discrimination with the EEOC and the PHRA. (Pl. Dep. Ex. 35 at 377-78.) On July 14, 2022, Plaintiff emailed Foulke, Belser, Eichenbaum, and Brian Hahn, Defendant's COO, to notify them of the pending Charge of Discrimination. (Pl. Aff. ¶ 33.)

On November 25, 2022, Plaintiff sent an email to Eichenbaum, Belser, and Hahn to notify them of a series of retaliatory actions that she had experienced since she filed her EEOC charge on July 22, 2022. (Id. ¶ 43.) No one from Defendant addressed her concerns. (Id. ¶ 44.) Beginning

[2] Ms. Pfiel's race is not identified in the evidentiary record before us.

in December 2022, Eichenbaum began cancelling or rescheduling his meetings with Plaintiff to discuss work. (Id. ¶ 45.) In addition, Plaintiff's annual performance review, which was originally scheduled for December 23, 2022, was canceled multiple times and she did not receive a copy of her performance appraisal until the Friday before her January 9, 2023 performance review. (Id. ¶¶ 46, 48.) Plaintiff usually received her performance appraisal weeks before her review, so that she could look at it and add comments to it before meeting with her supervisor. (Id. ¶ 47.) However, in this instance, she did not receive her performance appraisal until after she sent Eichenbaum an email on January 5, 2023, telling him that she "felt that the constant rescheduling of her performance review meeting was retaliatory and clearly connected to [her] EEOC charge of discrimination." (Id. ¶ 49.)

For 22 years, Plaintiff was responsible for oversight and compliance with federal law, including submitting mortgage lending data to the Consumer Finance Protection Bureau ("CFPB") pursuant to the Home Mortgage Disclosure Act ("HDMA").[3] (Id. ¶ 50; Pl. Dep. at 194.) Plaintiff was required to submit HMDA data to the CFPB on March 1, 2023. (Pl. Aff. ¶ 53.) On January 7, 2023, Plaintiff sent an email to Eichenbaum, William Mello (Defendant's VP of Commercial Lending), John Giordano (VP of First Heritage Financial), and Hahn asking to discuss a plan to increase mortgage applications from people of color. (Pl. Aff. ¶¶ 51-52; Pl. Dep. Ex. 41 at 394.) She was motivated to send the January 7, 2023 email by a belief that Defendant's lending practices were discriminatory and violated federal law, as evidenced by the HMDA data,. (Pl. Aff. ¶ 55.)

Plaintiff met with Eichenbaum for her annual performance review on January 9, 2023. (Pl. Aff. ¶ 56.) The review was "superficially positive," with Eichenbaum noting areas in which

[3] The HDMA data showed demographics for Defendant's approval and denial of mortgage applications as well as mortgage applications that had been withdrawn. (Pl.'s Dep. at 186.)

Planitiff needed improvement, which "were all related to aspects of [Plaintiff's] job that Eichenbaum had actively undermined during the preceding year." (Id. ¶ 57; see Pl. Dep. Ex. 42 at 395-407.) In addition, Eichenbaum told Plaintiff during their January 9, 2023 meeting that she should not have sent the January 7, 2023 email to Defendant's management without discussing it with him first. (Pl. Aff. ¶ 59.) Plaintiff told Eichenbaum that she believed that the HMDA data showed discrepancies in Defendant's lending practices that "could appear to be discriminatory." (Pl. Dep. at 185. 187.) Plaintiff did not think that anyone in Defendant's lending department was discriminating, but she believed that Defendant's advertising, which was focused on geographic areas where Defendant's branches were located, could have caused the discrepancies. (Id. at 187-88.) Eichenbaum dismissed Plaintiff's concerns and told her that the Defendant's lending practices were above her pay grade. (Id. at 185.)

Defendant did not take any action with respect to Plaintiff's January 7, 2023 email after Plaintiff's January 9, 2023 performance review. (Pl. Aff. ¶ 62.) On January 10, 2023, she submitted a whistleblower complaint to the CFPB "reporting what [she] reasonably believed to be unlawful discriminatory mortgage lending practices by [Defendant]." (Id. ¶ 63.) The same day, Plaintiff received an email from Belser, accusing her of "speaking to Eichenbaum in a 'disdainful, unprofessional and disrespectful manner' while characterizing Eichenbaum's actions as 'courteous and professional.'" (Id. ¶ 64.) On January 18, 2023, Plaintiff was notified by an employee in her department that the HMDA data was missing and could not be accessed. (Id. ¶ 66.) On February 3, 2023, Plaintiff was called into a meeting with Belser and Eichenbaum, and was handed a letter from Belser advising her that her employment was terminated. (Id. ¶ 69; Pl. Dep. Ex. 45 at 414.)

Plaintiff has brought claims against Defendant for race discrimination and retaliation under Title VII and 42 U.S.C. § 1981, and a claim for retaliation in violation of the Dodd-Frank Act.[4] She asserts that Defendant discriminated against her on the basis of her race, retaliated against her for making complaints of racial discrimination against Eichenbaum, and retaliated against her for making a complaint under Section 1057 of the Dodd Frank Act that Defendant's lending practices were discriminatory. Defendant has moved for summary judgment with respect to all of Plaintiff's claims, arguing that some of the claims are time-barred and that Plaintiff has no evidence to support her claims that Defendant (1) failed to promote her to a full Vice President position because of her race, and (2) that Defendant retaliated against her for lodging complaints about race discrimination and/or for making claims that Defendant engaged in racially discriminatory lending practices.

## II. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" if it "might affect the outcome of the suit under the governing law." Id. In ruling on a summary judgment motion, we "construe the evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion." Jacobs v. Cumberland

[4] Count I of the Complaint asserts a claim of disparate treatment race discrimination in violation of Title VII. Count II asserts a claim of hostile work environment race discrimination in violation of Title VII. Count III asserts a claim of retaliation in violation of Title VII. Count IV asserts a claim of disparate treatment race discrimination in violation of § 1981. Count V asserts a claim of racially hostile work environment in violation of § 1981. Count VI asserts a claim of retaliation in violation of § 1981. Count VII asserts a claim of retaliation in violation of the Dodd-Frank Act. Plaintiff agrees in her response to the Motion for Summary Judgment that "the evidence does not establish a hostile work environment claim." (Pl. Opp. at 12.) We therefore grant the Motion for Summary Judgment with respect to Counts II and V.

Cnty., 8 F.4th 187, 192 (3d Cir. 2021) (citing Bland v. City of Newark, 900 F.3d 77, 83 (3d Cir. 2018)).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the nonmoving party bears the burden of proof on a particular issue at trial, the movant's initial Celotex burden can be met simply by "pointing out to the district court[ ] that there is an absence of evidence to support the nonmoving party's case." Id. at 325. After the moving party has met its initial burden, the adverse party's response "must support the assertion [that a fact is genuinely disputed] by: (A) citing to particular parts of materials in the record . . . or (B) showing that the materials [that the moving party has cited] do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1).

We will grant summary judgment if the nonmoving party fails to respond with a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. "'While the evidence that the non-moving party presents may be either direct or circumstantial, and need not be as great as a preponderance, the evidence must be more than a scintilla.'" Galli v. New Jersey Meadowlands Comm'n, 490 F.3d 265, 270 (3d Cir. 2007) (quoting Hugh v. Butler Cnty. Fam. YMCA, 418 F.3d 265, 267 (3d Cir. 2005)). However, "[u]nsupported assertions, conclusory allegations, or mere suspicions are insufficient to overcome a motion for summary judgment." Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 252 (3d Cir. 2010) (citing Williams v. Borough of West Chester, 891 F.2d 458, 460 (3d Cir. 1989)).

## III. DISCUSSION

### A. Race Discrimination – Disparate Treatment

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Section 1981 provides, in pertinent part, as follows:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind and to no other.

42 U.S.C. § 1981(a). "Although § 1981 does not itself use the word 'race,' the [Supreme] Court has construed the section to forbid all 'racial' discrimination in the making of private as well as public contracts." St. Francis Coll. v. Al-Khazraji, 481 U.S. 604, 609 (1987) (citing Runyon v. McCrary, 427 U.S. 160, 168, 174-75 (1976)). We analyze race discrimination claims brought pursuant to § 1981 under the same standard under which we analyze such discrimination claims under Title VII. Carvalho-Grevious v. Delaware State Univ., 851 F.3d 249, 256-57 (3d Cir. 2017) ("The substantive elements of a [racial discrimination] claim under § 1981 are generally identical to the elements of an employment discrimination claim under Title VII." (alteration in original) (quotation omitted)).

Plaintiff's disparate treatment claims are based on Defendant's alleged failure to promote her and on her termination. Where, as here, there is no direct evidence of discrimination, claims of race discrimination in employment are analyzed under the burden shifting framework set forth

in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-03 (1973). See Kant v. Seton Hall Univ., 289 F. App'x 564, 566 (3d Cir. 2008) (citations omitted). That "framework requires that the plaintiff first establish a *prima facie* case of discrimination." Tourtellotte v. Eli Lilly & Co., 636 F. App'x 831, 842 (3d Cir. 2016). "If the plaintiff successfully meets the requirements of a *prima facie* case, the burden then shifts to the employer to articulate a legitimate . . . nondiscriminatory reason for its actions." Id. "If the employer produces such a reason, the burden then shifts back to the plaintiff to prove that the employer's . . . nondiscriminatory explanation is merely a pretext for the discrimination." Id. (citing McDonnell Douglas, 411 U.S. at 802-04; Atkinson v. LaFayette Coll., 460 F.3d 447, 454 (3d Cir. 2006)). To defeat a motion for summary judgment at the pretext stage "the [plaintiff] 'must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.'" Id. (quoting Tomasso v. Boeing Co., 445 F.3d 702, 706 (3d Cir. 2006)).

1. Statute of Limitations

Defendant argues that Plaintiff's Title VII disparate treatment race discrimination claim should be dismissed to the extent that it is based on discrete discrimantory acts that occurred outside of the statute of limitations for Title VII claims. To file suit under Title VII, a plaintiff who is filing a charge of discrimination with both a state or local agency and the EEOC, must file the charge "within three hundred days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1); see also Mandel v. M & Q Packaging Corp., 706 F.3d 157, 165 (3d Cir. 2013). "'[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges.'" Mandel, 706 F.3d at 165 (alteration in original)

(quoting Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002)). "A discrete act in itself constitutes a separate actionable unlawful employment practice." Id. (citing Morgan, 536 U.S. at 114). "Discrete acts include, for example, 'termination, failure to promote, denial of transfer, or refusal to hire.'" Id. (quoting Morgan, 536 U.S. at 114). Plaintiff dual filed her initial Charge of Discrimination against Defendant with the EEOC and the Pennsylvania Human Relations Commission on July 13, 2022. (Pl. Dep. Ex. 35 at 377-78.) Consequently, her Title VII claims are only timely if they are based on discrete discriminatory acts that occurred on or after September 16, 2021. Defendant argues that Plaintiff's failure to promote claims are based, in part, on discrete acts prior to that date. Indeed, Plaintiff's failure to promote claim appears to encompass Defendant's failure to promote her as far back as 2014. (See Pl. Aff. ¶¶ 26-34.) As failures to promote are discrete acts, see Mandel, 706 F.3d at 165 (quotation omitted), any claim based on a failure to promote prior to September 6, 2021 is time barred.

Defendant also argues that Plaintiff's § 1981 disparate treatment race discrimination claim should be dismissed to the extent that it is based on discrete acts that occurred outside of the statute of limitations for such claims. Plaintiff's § 1981 failure to promote claim is governed by a four-year statute of limitations pursuant to 28 U.S.C. § 1658. See Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 382-833 (2004) (explaining that employment discrimination claims brought pursuant § 1981, as amended by the Civil Rights Act of 1991, are subject to the four-year statute of limitations for civil claims arising under federal law); see also 28 U.S.C. § 1658(a) ("Except as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of the enactment of this section may not be commenced later than 4 years after the cause of action accrues."). Plaintiff filed the instant action on November 20, 2023. Thus, her § 1981 claim is time

barred to the extent that it pertains to Defendant's alleged failure to promote her prior to November 20, 2019.

Notably, the record reflects that Plaintiff was promoted to AVP of Quality Control in 2018. (Pl. Dep. at 52.) Thus, Plaintiff's only timely Title VII failure to promote claim is that Defendant failed to promote Plaintiff to a VP position on or after September 21, 2021, and Plaintiff's failure to promote § 1981 claim is timely only to the extent that it relies on Defendant's failure to promote her to a VP position on or after November 20, 2019. We therefore grant the Motion for Summary Judgment with respect to Plaintiff's Title VII failure to promote claim to the extent that it pertains to any failure to promote Plaintiff prior to September 21, 2021 and with respect to Plaintiff's § 1981 failure to promote claim to the extent that it pertains to Defendant's failure to promote Plaintiff prior to November 20, 2019.

2. Prima Facie Failure to Promote Claims

Defendant argues that it is entitled to summary judgment with respect to Plaintiff's Title VII and § 1981 claims arising from its alleged failure to promote Plaintiff to Vice President because she cannot establish prima facie failure-to-promote claims. In order to establish a prima facie failure to promote claim, Plaintiff must establish the following: "(1) [she] belongs to a protected group; (2) [she] applied for and had the requisite qualifications for an available job; (3) [she] was rejected for that position; and (4) after the plaintiff's rejection, the defendant continued to seek applications from individuals with the plaintiff's qualifications." Fields v. Reconn Holdings, LLC, Civ. A. No. 22-3814, 2024 WL 1889785, at *6 (E.D. Pa. Apr. 30, 2024) (citing Bray v. Marriott Hotels, 110 F.3d 986, 990 (3d Cir. 1997)). "If an employee makes out this prima facie case, the burden shifts to the employer to produce a legitimate non-discriminatory reason for the employee's rejection." Mangold v. PECO Energy, Civ. A. No. 19-5912, 2021 WL 6072818, at *18 (E.D. Pa.

Dec. 23, 2021) (citing Young v. Pennsauken Twp. Sch. Dist., 47 F. App'x 160, 161 (3d Cir. 2002)). "If the employer produces a legitimate reason, the burden then shifts back to the employee to show pretext." Id. (citing Young, 47 F. App'x at 161).

Defendant argues that Plaintiff cannot establish a prima facie failure to promote claim because she cannot establish that there was an available VP position for which she applied and was qualified. Defendant maintains that the record evidence establishes that it has never had a VP in its Quality Control Department. Plaintiff herself testified during her deposition that, after she was promoted to AVP of the Quality Control Department, she had the highest position in that Department. (Pl. Dep. at 121.) She also testified that, during her 30 years working for Defendant, the Quality Control Department had never had a VP. (Id. at 162.) Plaintiff admitted during her deposition that there had never been a posting for a VP position in the Quality Control Department. (Id. at 175.) In addition, Plaintiff stated during her deposition that she never applied for a posting for a VP position in a different Department with Defendant. (Id.) Eichenbaum states in his Affidavit that Defendant has never created or posted a position of VP of Quality Control. (Eichenbaum Aff. ¶ 7.) The woman who currently leads Defendant's Quality Control Department is an Assistant Manager. (Eichenbaum Dep. at 12.)

Plaintiff maintains that she can establish a prima facie case of discrimination based on Defendant's failure to promote her because she has pointed to evidence that Clare Pfeil was promoted to the position of Defendant's VP of Electronic Fund Services in November 2021, even though she led a smaller department with fewer employees than Plaintiff and had not been employed by Defendant for as long as Plaintiff. (See Pl. Aff. ¶¶ 28-29; Pl.'s Opp. at 5; Pl. Dep. at 161.) Plaintiff also points to evidence that the Electronic Funds Service Department did not have a VP before Pfeil was promoted to that position. (Pl. Dep. at 160-62.) Plaintiff further relies on

evidence that she was not promoted to VP even though she supervised a department that "was pretty much five departments" with five supervisors and 20 employees, and whereas Defendant promoted to VP the manager of another department even though that department only "had one area to cover" and five employees. (Pl. Dep. at 121-22.) Plaintiff also relies on evidence that Defendant made Colleen Jones its VP of Trainings even though Jones oversaw only five employees and none of them were supervisors.[5] (Id. at 179.)

Plaintiff has pointed to no record evidence that she applied for and was denied a promotion to a VP position with Defendant. She also has failed to point to any record evidence that there was an available VP position with Defendant to which she could have been promoted.[6] While Plaintiff has pointed to some evidence to support her contention that Defendant could or should have created a VP position in Plaintiff's Quality Control Department, she has identified no authority that supports her premise that an employer's failure to create a new position into which a plaintiff could be promoted can suffice to establish that there was an available position. See Fields, 2024 WL 1889785, at *6. We conclude, accordingly, that Plaintiff has failed to satisfy her burden of pointing to record evidence that would be sufficient to establish that she applied for and was qualified for an available position, as is required to make out a prima facie claim of race discrimination based on a failure to promote. Celotex, 477 U.S. at 322. We therefore grant the Motion for Summary Judgment with respect to Plaintiff's claims that Defendant failed to promote her based on her race in violation of Title VII and § 1981.

---

[5] Ms. Jones's race is not identified in the record before us.

[6] Plaintiff claims that she was not aware of all of Defendant's open VP positions because Defendant did not post all of these openings. (Pl. Dep. at 123.)

3. Prima Facie Wrongful Termination Claims

Defendant argues that we should grant its Motion for Summary Judgment with respect to Plaintiff's claims that she was terminated on the basis of her race in violation of Title VII and § 1981 because the record evidence does not support a prima facie case. In order to establish a prima facie case of discrimination a plaintiff must demonstrate the following: (1) the plaintiff "is a member of a protected class," (2) the plaintiff was "qualified for the position," (3) the plaintiff "suffered an adverse employment action[,]" and (4) the adverse employment action occurred "under circumstances that give rise to an inference of unlawful discrimination." Lynn v. Bank of N.Y. Mellon., 180 F.4th 133, 140 (3d Cir. 2026). (quotation omitted). Defendant argues that Plaintiff cannot establish a prima facie case because she cannot point to evidence that would establish the fourth element, i.e., that she was terminated under circumstances that would give rise to an inference of race discrimination.

On summary judgment, a plaintiff "must produce 'evidence adequate to create an inference that an employment decision was based on a[n] [illegal] discriminatory criterion.'" Leftwich v. Lew, Civ. A. No. 15-300, 2015 WL 8773274, at *7 (E.D. Pa. Dec. 14, 2015) (alterations in original) (quoting Kier v. F. Lackland & Sons, LLC, 72 F. Supp. 3d 597, 608-09 (E.D. Pa. 2014)), aff'd sub nom. Leftwich v. Sec'y United States Dep't of the Treasury, 741 F. App'x 879 (3d Cir. 2018). "The 'central focus' of the prima facie case 'is always whether the employer is treating some people less favorably than others because of their race.'" Id. (quoting Sarullo v. U.S. Postal Serv., 352 F.3d 789, 798 (3d Cir. 2003) (internal quotation omitted)). A plaintiff "can support an inference of discrimination 'in a number of ways, including, but not limited to, comparator evidence, evidence of similar racial discrimination of other employees, or direct evidence of discrimination from statements or actions by her supervisors suggesting racial animus.'" Id. (quoting Golod v. Bank

of Amer. Corp., 403 F. App'x 699, 702 n.2 (3d Cir. 2010)). When relying on comparator evidence, "a plaintiff can create an inference of discrimination . . . by offering evidence of a similarly situated employee, not of the protected class, who was treated more favorably" than the plaintiff. Viscomi v. Corizon Corr. Healthcare, Civ. A. No. 14-5759, 2015 WL 4770589, at *3 (E.D. Pa. Aug. 12, 2015) (citing Simpson v. Kay Jewelers, Div. of Sterling, Inc., 142 F.3d 639, 645 (3d Cir. 1998)).

Plaintiff has not submitted any evidence that would create an inference that she was fired because of her race. Specifically, she points to no evidence that other employees, not in her protected class, were treated differently than she was with respect to her termination, no evidence of similar racial discrimination of other employees, and no direct evidence of discrimination in the statements or actions of her supervisors that suggest racial animus.[7] We conclude, accordingly, that Plaintiff has failed to establish a prima facie case of race discrimination in connection with her termination. As Plaintiff has failed to establish a prima facie case of race discrimination pursuant to Title VII and § 1981 with respect to both her failure to promote and wrongful termination claims, we grant the Motion for Summary Judgment with respect to Plaintiff's disparate treatment race discrimination claims in Counts I and IV, and we grant judgment in favor of Defendant and against Plaintiff with respect to these Counts.

B. Retaliation in Violation of Title VII and § 1981

Defendant argues that we should grant its Motion for Summary Judgment with respect to Plaintiff's claims in Counts III and VI that she was fired in retaliation for complaining about race

[7] Plaintiff contends that she was terminated because she complained about race discrimination, but such an argument is not one that she was terminated because of her race. Rather, it is part of her claims in Counts III and VI that she was retaliated against in violation of Title VII and § 1981.

discrimination in violation of Title VII and § 1981. Specifically, Defendant argues that Plaintiff cannot establish a prima facie case of retaliation.

The United States Court of Appeals for the Third Circuit has explained that we evaluate retaliation claims under the three-part McDonnell Douglas framework. First, the plaintiff must make a prima facie showing that: "(1) [she] engaged in activity protected by Title VII; (2) the employer took an adverse employment action against [her]; and (3) there was a causal connection between [her] participation in the protected activity and the adverse employment action." Smith v. City of Atl. City, 138 F.4th 759, 775 (3d Cir. 2025) (quoting Moore v. City of Phila., 461 F.3d 331, 340-41 (3d Cir. 2006)) (internal quotation omitted)). "If the [p]laintiff makes this showing, the burden shifts to the employer to advance a 'legitimate, non-retaliatory reason' for its conduct." Id. (quoting Moore, 461 F.3d at 342). "If the employer makes such a showing, the burden shifts back to the [p]laintiff 'to convince the factfinder both that the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action.'" Id. (quoting Moore, 461 F.3d at 342).

1. The Prima Facie Case

Defendant contends that Plaintiff cannot establish a prima facie case of retaliation because she cannot establish that she engaged in protected activity. "Title VII defines a protected activity as an instance where an employee has opposed any practice made unlawful or has made a charge, testified, assisted, or participated in an investigation under Title VII." Wadhwa v. Sec'y, Dep't of Veterans Affs., 505 F. App'x 209, 214 (3d Cir. 2012) (citing 42 U.S.C. § 2000e-3(a)). "Protected activity includes oral and written complaints and protests, whether formal or informal, to discriminatory practices prohibited by the statute." Parker v. Phila. Newspapers, Inc., 322 F. Supp. 2d 624, 630 (E.D. Pa. 2004) (citing Abramson v. William Paterson Coll. of New Jersey, 260 F.3d

265, 287-88 (3d Cir. 2001)). "'Whether the employee opposes, or participates in a proceeding against, the employer's activity, the employee must hold an objectively reasonable belief, in good faith, that the activity they oppose is unlawful under Title VII.'" Wadhwa, 505 F. App'x at 215 (quoting Moore, 461 F.3d at 341).

Defendant argues that Plaintiff cannot establish that she engaged in protected activity even though she made multiple complaints to Defendant about race discrimination and retaliation. Specifically, Defendant maintains that Plaintiff's complaints of racial discrimination were not made in good faith because they were baseless. Plaintiff counters that there is record evidence that she engaged in protected activity by making good faith complaints about discrimination.

The record shows that on March 22, 2021, Plaintiff wrote to Flora Caranci, who was then Defendant's SVP of HR, to complain that she had not received promotions as often as Caucasian employees. (Pl. Dep. Ex. 33 at 372.) Plaintiff stated in her letter that she saw Defendant's failure to promote her while promoting Caucasian employees as racial discrimination. (Id.) Plaintiff's March 22, 2021 letter concludes with the following specific claim of race discrimination:

> What does it take to reach a VP status[?] I have several small departments within Quality Control, and I am at the AVP status? I see other departments that only have 4 to 5 employees and the department head is at the VP level. All issues described above my coworkers are all Caucasian is why I see this as racial discrimination.

(Id.)

Kristine Belser, Defendant's new Senior VP of HR, responded to Plaintiff's complaint by email dated April 21, 2021. (Pl. Dep. Ex. 34 at 373-74.) Belser states in the email that the "HR department takes all concerns and claims of discrimination very seriously." (Id. at 373.) Belser further states that Defendant "ha[s] concluded that the management team has demonstrated sufficient business reasoning for the current position level to be categorized as AVP and not VP, and that neither race, color, ethnicity, age, gender, nor any other class was a consideration in the

decision of how the position is structured or graded." (Id.) Belser further stated in this letter that Defendant wanted her "to know that we understand how things on the surface may sometimes have the appearance of being bias [sic] or unfair" but assured Plaintiff "that [their] investigation and inquiries found that discrimination played no part in the decision not to elevate the AVP QC position to VP QC." (Id. at 374.)

On March 4, 2022, Plaintiff sent an email to Belser making "a formal complaint of racial discrimination and retaliation directly or indirectly by [certain] employees or former employees of [Defendant]." (Pl. Dep. Ex. 36 at 379.) The email named Caranci, McCaw, and Eichenbaum as the offending employees. (Id.) The email also lists six examples of perceived race discrimination and 11 instances of perceived retaliation. (Id. at 379-80.) The examples of discrimination included Defendant's failure to promote Plaintiff to a VP position and Defendant's failure to promote Plaintiff at the same rate that it promoted Caucasian employees. (Id. at 379.) Belser sent Plaintiff an email on April 6, 2022, responding to Plaintiff's March 4, 2022 complaint of race discrimination. (Pl. Dep. Ex. 39 at 386.) Belser rejected Plaintiff's claim of discrimination as follows:

> Previous and current investigations into these claims have found that you have not been the subject of discrimination, disparate treatment, retaliation, or any adverse action, nor have you been subject to hostile work conditions or unfair employment practices. The investigations into your claim have repeatedly found that your assertions are unfounded, lack sufficient evidence and/or that the evidence provided has no merit on the basis of discrimination or retaliation.
>
> * * *
>
> Ultimately, the investigations have found repeatedly that there is a fundamental disagreement between you and your leadership about the structure and management of the QC department and that these differences are not based on discriminatory factors or discriminatory employment practices but based in sound and relevant business process and decision making.

(Id. at 386-87.)

On July 13, 2022, Plaintiff dual-filed a Charge of Discrimination with the EEOC and the PHRA. (Pl. Dep. Ex. 35 at 377-78.) In her Charge of Discrimination, Plaintiff states that she "believe[s] that [she is] being discriminated against because of [her] race, due to having white coworkers being promoted to higher positions prior to [her], at a steady pace, less tenure, and smaller departments." (Id. at 377.) She also complained that she was treated differently than white employees in that, inter alia, Defendant refused to interview her son for a job even though family members of white employees received interviews and jobs, and she asserted that Bryan Eichenbaum showed "clear favoritism" to white employees. (Id. at 378.)

Defendant's argument that these complaints were made in bad faith is supported solely by its insistence that it "comprehensively, dutifully and rigorously investigated Plaintiff's concerns in good faith and in each instance found no evidence of discrimination or retaliation." (Def. Mem. at 14 (citations omitted).) However, Defendant has failed to point to any authority for the proposition that we can find as a matter of law that a complaint of discrimination is baseless and made in bad faith because a defendant, after conducting an internal investigation, denies having engaged in race discrimination. We conclude that Plaintiff has satisfied her burden of pointing to record evidence that demonstrates the existence of a genuine issue of material fact regarding whether she made good faith complaints of discrimination. Accordingly, we deny the Motion for Summary Judgment with respect to this argument.

2. Defendant's Reason for Plaintiff's Termination

Since we have found that there is a genuine issue of material fact regarding whether Plaintiff made good faith complaints of discrimination, the burden of production now shifts to Defendant "'to articulate a legitimate, nondiscriminatory reason'" for its decision to terminate Plaintiff. Calloway v. PECO Energy Co., Civ. A. No. 23-4034, 2026 WL 1045908, at *26 (E.D.

Pa. Apr. 17, 2026) (quoting Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994)). "'The employer satisfies its burden of production by introducing evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision.'" Id. (quoting Fuentes, 32 F.3d at 763). "Defendant['s] burden is 'relatively light' because [it] need not prove the reason '*actually* motivated [its] behavior'; that burden remains with [the plaintiff]." Id. (quoting Fuentes, 32 F.3d at 763).

Defendant argues that we should grant its Motion for Summary Judgment with respect to Plaintiff's retaliation claims because it had legitimate, non-discriminatory reasons for terminating Plaintiff. The termination letter that Defendant sent to Plaintiff states that she was "terminated for cause as of February 3, 2023" because her "conduct and behavior has caused significant disruption and risk to business operations, has interfered with management prerogatives, and is creating a hostile work environment." (Pl. Dep. Ex. 45 at 414.) Defendant also asserts that it terminated Plaintiff for the following legitimate nondiscriminatory reasons. Plaintiff did not complete work on time between October 21, 2022 and January 9, 2023. (Eichenbaum Dep. at 27.) After Plaintiff's performance review, she decided, without permission, to move "the check processing for payoffs from another department that wasn't under [Eichenbaum's] purview to hers." (Id. at 37-38.) After Eichenbaum set up a meeting with the department that previously handled the check processing for payoffs, Plaintiff sent an email to the entire group "with information that was not completely true and accurate." (Id. at 38-39.) Furthermore, during her annual performance evaluation with Eichenbaum on January 9, 2023, Plaintiff "became more and more agitated . . . to a point where it became combative, and [Plaintiff] made statements that were unprofessional to [Eichenbaum]." (Id. at 26, 28.) Specifically, Plaintiff told Eichenbaum that he "was defaming her character;" that she did not need to accept his criticisms, and that "she no longer want[ed] to report to [him] . . .

which created, unfortunately, an untenable situation" because "it just created a situation that didn't allow [Eichenbaum] the ability to provide oversight in the department." (Id. at 31-32.)

When asked at her deposition to specify the conduct that Defendant contended "caused significant disruption and risk to business operations," Belser mentioned Plaintiff's refusal to follow Eichenbaum's instructions and unwillingness to continue working with him. (Belser Dep. at 31.) Belser described Plaintiff's conduct as "very insubordinate." (Id. at 32.) Belser also stated that Plaintiff had caused significant disruption because she had a lack of focus, which led to errors and monetary losses caused by employees in her department. (Id.) Belser explained that, on one occasion, an employee in Plaintiff's department erroneously released a lien, resulting in a loss of more than $20,000. (Id. at 64.) Another employee in Plaintiff's department committed an error with respect to an auto company. (Id.) Defendant terminated both of those employees. (Id. at 66.) Belser believed that Plaintiff was "unfocused, unwilling to work with her supervisor, [and] insubordinate," and asserted that this conduct "led to a hostile work environment and business disruption." (Id. at 66.) Taking Defendant's arguments and the record evidence into consideration, we conclude that Defendant has satisfied its burden of "articulat[ing] a legitimate, nondiscriminatory reason" for its decision to terminate Plaintiff. Calloway, 2026 WL 1045908, at *26 (quotation omitted).

3. Pretext

As Defendant has satisfied its "relatively light" burden of showing that it had a "legitimate, nondiscriminatory reason" for its decision to terminate Plaintiff, Calloway, 2026 WL 1045908, at *26 (quotation omitted), "the burden . . . shifts back to the plaintiff to prove that [Defendant's] . . . nondiscriminatory explanation is merely a pretext for the discrimination," Tourtellotte, 636 F.

App'x at 842 (citations omitted). The Third Circuit has articulated the Plaintiff's burden at the third step of the McDonnell Douglas framework as follows:

> because the factfinder may infer from the combination of the plaintiff's prima facie case and its own rejection of the employer's proffered non-discriminatory reasons that the employer unlawfully discriminated against the plaintiff and was merely trying to conceal its illegal act with the articulated reasons, a plaintiff who has made out a prima facie case may defeat a motion for summary judgment by *either* (i) discrediting the proffered reasons, either circumstantially or directly, or (ii) adducing evidence, whether circumstantial or direct, that discrimination was more likely than not a motivating or determinative cause of the adverse employment action. Thus, if the plaintiff has pointed to evidence sufficiently to discredit the defendant's proffered reasons, to survive summary judgment the plaintiff need not also come forward with additional evidence of discrimination beyond his or her prima facie case.

Fuentes, 82 F.3d at 764 (citations omitted).

Plaintiff argues that Defendant's proffered reasons for her termination are pretextual because, prior to her firing, her performance reviews were excellent, she was never written up, and she was never issued any discipline. Plaintiff asserts that, after she worked for Defendant for 30 years without incident, Defendant's assertion that she was fired for insubordination and creating a hostile work environment strains credulity.

The evidence shows that Eichenbaum "always thought that [Plaintiff] was an individual who had a great deal of knowledge of the department and . . . that the department was running functionally." (Eichenbaum Dep. at 19.) In Plaintiff's 2022 performance evaluation, Eichenbaum rated Plaintiff's performance as exceptional with respect to "job knowledge," "meets expectations" with respect to work assignments and quality of work, "highly commendable" for teamwork, and "needs improvement" for both leadership and communications. (Id. at 21-23.) Eichenbaum gave Plaintiff an overall rating of "meets expectations" for 2022. (Id. at 24.) Plaintiff did not agree with all of Eichenbaum's assessments of her work and had rated herself exceptional with respect

to work assignments and highly commendable with respect to quality of work. (Id. at 22.) Eichenbaum discussed Plaintiff's 2022 job evaluation with her during the January 9, 2023 meeting.

Eichenbaum reports that Plaintiff became combative during their January 9, 2023 meeting and made unprofessional statements. (Id. at 28.) When asked to describe Plaintiff's combative and unprofessional conduct, Eichenbaum stated that Plaintiff told him that she believed that his evaluation was defamatory, that she did not accept his comments, and that she did not want to work for him anymore. (Id. at 31-32.) Eichenbaum admits that, while Plaintiff spoke loudly and directly, she was not physical or physically threatening. (Id. at 32-33.) She did not use curse words or profanity. (Id. at 33.) Eichenbaum maintains that Plaintiff threatened to sue him during their January 9, 2023 meeting and that she refused to sign her evaluation. (Id. at 32, 37.) Eichenbaum and others discussed disciplining Plaintiff over this conduct, but the decision was made to terminate her instead. (Id. at 36.) Eichenbaum also testified that, following this meeting, Plaintiff sent an email to employees of Defendant about a work matter that included information that Eichenbaum considered to be not entirely accurate. (Id. at 38-39.) Eichenbaum characterized the sending of this email as an "unprofessional outburst." (Id. at 37-39.)

Belser stated during her deposition that one of the reasons why Plaintiff was terminated was that she wouldn't follow Eichenbaum's instructions. (Belser Dep. at 31.) When asked to give an example, Belser testified that Eichenbaum once asked Plaintiff for specific information and Plaintiff responded that the information did not exist. (Id. at 33.) On another occasion, Plaintiff was reluctant to put a vendor system in place. (Id.) Plaintiff also denied that there were issues with the processes she had in place in her department, and resisted Belser's suggestions to change those processes, after two of her employees were fired for making mistakes that cost Defendant money. (Id. at 34.) Belser also claimed that Plaintiff created a hostile work environment for

Eichenbaum by refusing to sign her 2022 performance appraisal, asserting that statements made in the appraisal were slanderous and libelous, and by expressing that she no longer wanted to work with Eichenbaum following her review. (Id. at 35-37.) Belser also admitted that Plaintiff was never subjected to any discipline by Defendant while Belser was employed by Defendant. (Id. at 34, 40.)

Belser was aware, prior to Plaintiff's 2022 performance evaluation, that Plaintiff had filed a charge of discrimination against Defendant with the EEOC. (Id. at 53.) In addition, Belser testified that Eichenbaum was concerned, prior to his January 9, 2023 meeting with Plaintiff, that Plaintiff would "retaliate against him" by getting angry about the improvement areas that he had given her or by leaving the meeting because she was upset. (Id. at 59-61.)

Based on the evidence provided in the depositions of Defendant's employees, we find that a jury could reasonably conclude that Plaintiff has satisfied her burden of pointing to record evidence that discredited Defendant's proffered reasons for firing Plaintiff. Fuentes, 32 F.3d at 764. As we have described in the preceding paragraphs, Plaintiff had been employed by Defendant for 30 years and there is no evidence that she had ever been disciplined by Defendant in any way prior to her termination. After Defendant learned that Plaintiff had filed a Charge of Discrimination with the EEOC, Plaintiff's supervisor gave her a critical performance appraisal. Plaintiff's supervisor discussed his criticisms of Plaintiff with the SVP of HR prior to giving Plaintiff her performance appraisal and expressed concern that these criticisms would cause Plaintiff to become upset. Plaintiff reacted to the performance appraisal as expected, by becoming upset. She disagreed with her performance appraisal and claimed that it was defamatory, threatened to sue her supervisor for defaming her, and informed him that she did not want to work with him anymore. There is also record evidence that Plaintiff did not yell, use bad language, or

become physically violent or threatening during her January 9, 2023 meeting. Subsequently, instead of choosing to discipline its employee of 30 years for becoming upset over what she believed was an unfairly negative performance appraisal, and instead of reassigning her to a new supervisor, Defendant deemed her conduct "insubordinate," as if she were a junior employee rather than part of Plaintiff's management team, and fired her because she "created a hostile work environment" for her supervisor by describing her performance appraisal as defamatory, failing to sign her performance appraisal, and telling him that she didn't want to work for him anymore. We conclude that Plaintiff has satisfied her burden of pointing to evidence that creates a genuine issue of material fact regarding whether Defendant's reason for terminating her employment was pretext, and we deny the Motion for Summary Judgment with respect to Plaintiff's claims of retaliation in violation of Title VII and Section 1981.

C. Retaliation in Violation of Section 1057 of the Dodd-Frank Act

Defendant argues that Plaintiff cannot establish a prima facie case of retaliation in violation of the Dodd-Frank Act. "The Dodd-Frank Act created a private cause of action in federal court for whistleblowers who believe that they have been retaliated against for taking specified protected actions." Downey v. United States, 816 F. App'x 625, 627-28 (3d Cir. 2020) (citing Khazin v. TD Ameritrade Holding Corp., 773 F.3d 488, 491 (3d Cir. 2014)). "Title 10 of the [Dodd-Frank Act], which created the Consumer Financial Protection Bureau (CFPB), prohibits discrimination against a 'covered employee' who, among other things, 'provide[s] . . . information to [his or her] employer, the Bureau, or any other State, local, or Federal, government authority or law enforcement agency relating to' a violation of a law subject to the CFPB's jurisdiction." Digital Realty Tr., Inc. v. Somers, 583 U.S. 149, 161 (2018) (second, third, and fourth alterations in original) (quoting 12 U.S.C. § 5567(a)(1)). "To qualify as a 'covered employee,' an individual

need not provide information to the CFPB, or any other entity," id. (citing 12 U.S.C. § 5567(b)), as long as the employee provided information regarding a violation of the Act to their employer, 12 U.S.C. § 5567(a)(1). "'[T]o plead a valid claim for retaliation under Dodd-Frank, [a] Plaintiff must allege that: (1) [s]he engaged in protected activity; (2) [s]he suffered a materially adverse employment action; and (3) there was a causal connection between the adverse action and the protected activity.'" Slawin v. Bank of Am. Merch. Servs., 491 F. Supp. 3d 1334, 1339-40 (N.D. Ga. 2020) (quotation omitted); see also Edwards v. First Tr. Portfolios L.P., Civ. A. No. 23-2239, 2025 WL 1678159, at *2 (N.D. Tex. June 12, 2025) (quoting Slawin, 491 F. Supp. 3d at 1339-40) (add'l citation omitted).

Defendant contends that Plaintiff cannot satisfy the third element of a claim of retaliation under the Dodd-Frank Act because she cannot establish that it was aware that she had participated in activity that was protected by the Act before it terminated her employment. The record shows that Plaintiff submitted a complaint to the CFPB on January 10, 2023, asserting that "[Defendant] was engaging in discriminatory mortgage lending practices." (Def. Statement of Add'l Facts ¶ 75; Pl.'s Opp. to Def.'s Statement of Material Facts (Docket No. 24-1) ¶ 75.) Defendant denies knowing about this complaint. (Def. Statement of Add'l Facts ¶ 77.) The record also shows, however, that Plaintiff mentioned to Eichenbaum that Defendant's HMDA data showed discrepancies in its lending practices and that she also sent a January 7, 2023 email to Defendant's senior management regarding the HMDA data. (Pl. Dep. at 185, 197; Pl. Aff. ¶ 50.) Specifically, Plaintiff sent her January 7, 2023 email to Eichenbaum, William Mello, and Hahn. (Pl. Dep. Ex. 41 at 394; Pl. Dep. at 198; Belser Dep. at 26).) Plaintiff stated in this email that she would like to meet "to discuss a plan to increase the number of applications received/originated from people of color." (Pl. Dep. Ex. 41 at 394.) The HMDA data attached to the email included data related to

"Performance by Gender[;] . . . Performance by Race[;] . . . [and] Performance by Ethnicity[.]" (Id.) Plaintiff states that she sent this email because she "believed [Defendant's] lending practices, as evidence by the HMDA data, were discriminatory and violated federal laws," including the Dodd-Frank Act, the HMDA, the Equal Credit Opportunity Act, and the Fair Housing Act. (Pl. Aff. ¶ 55.) The email itself does not mention that Plaintiff believed that Defendant's lending practices were discriminatory or violated federal law.[8] (Pl. Dep. Ex. 41 at 394.)

However, as mentioned above, there is evidence that Plaintiff discussed her beliefs about Defendant's HMDA data with Eichenbaum during her January 9, 2023, performance review meeting. (Pl. Aff. ¶ 59.) Plaintiff told Eichenbaum during this meeting that she "believed [Defendant] was systematically excluding people of color from mortgage lending by maintaining nearly all its offices and all its loan officers in majority-white neighborhoods and avoiding marketing in majority-minority areas." (Id. ¶ 60.) Eichenbaum told Plaintiff that her concerns about Defendant engaging in discriminatory lending practices were concerns about something that was "above [her] pay grade." (Id. ¶ 61.)

We find that there is record evidence from which a juror could conclude that Plaintiff made a complaint that Defendant had engaged in discriminatory lending practices to a member of Defendant's senior management, i.e., Eichenbaum, on January 9, 2023, prior to Plaintiff's termination. We therefore reject Defendant's argument that Plaintiff has not established the third element of a prima facie retaliation claim because she has failed to point to record evidence that

[8] Plaintiff testified during her deposition that her email does not state that Defendant's lending practices were discriminatory because she "didn't think the lending practice was discriminatory." (Pl. Dep. at 198.) While Plaintiff's Affidavit appears to directly contradict her deposition testimony, Plaintiff explained during her deposition that, while she did not believe that anyone in Defendant's Lending Department was discriminating, she believed that Defendant's marketing and office locations could have resulted in discrepancies in Defendant's lending that appeared discriminatory.

Defendant was aware that she had engaged in activity protected by the Dodd–Frank Act. Rather, we conclude that Plaintiff has demonstrated the existence of a genuine issue of material fact as to this element of her prima facie case of retaliation in violation of the Dodd-Frank Act and we deny Defendant's Motion for Summary Judgment with respect to this argument.

Defendant also argues that we should grant the Motion for Summary Judgment with respect to Plaintiff's retaliation claim under the Dodd-Frank Act because it has demonstrated that it would have terminated her even absent her protected activity. Defendant relies on 12 U.S.C. § 5567(c)(3)(B), which provides that the Secretary of Labor will not investigate a complaint brought by an individual who claims to have been discriminated against in violation of the Dodd-Frank Act, "if the employer demonstrates, by clear and convincing evidence, that the employer would have taken the same unfavorable personnel action in the absence of that behavior." 12 U.S.C. § 5567(c)(3)(B). We concluded above that Plaintiff has pointed to record evidence that establishes a genuine issue of material fact regarding whether Defendant's reason for terminating her employment is pretext. We further conclude that this evidence creates a genuine issue of material fact regarding whether Defendant would have terminated Plaintiff in the absence of her protected activity. Accordingly, we deny the Motion for Summary Judgment with respect to Plaintiff's claim that she was fired in violation of the Dodd-Frank Act.

## IV. CONCLUSION

For the reasons stated above, we grant Defendant's Motion for Summary Judgment in part and deny it in part. We grant the Motion for Summary Judgment with respect to Plaintiff's claims in Counts I and IV of the Complaint that Defendant failed to promote her and fired her based on her race in violation of Title VII and Section 1981, and we dismiss those Counts of the Complaint. We also grant the Motion for Summary Judgment with respect to Plaintiff's claims in Counts II

and V of the Complaint that she was subjected to a hostile work environment based on her race in violation of Title VII and § 1981, and we dismiss those Counts of the Complaint. We deny the Motion for Summary Judgment with respect to Plaintiff's claim in Count III of the Complaint that Defendant retaliated against her in violation of Title VII, Plaintiff's claim in Count VI of the Complaint that Defendant retaliated against her in violation of § 1981, and Plaintiff's claim in Count VII of the Complaint that Defendant retaliated against her in violation of Section 1057 of the Dodd-Frank Act. An appropriate order follows.

BY THE COURT:

/s/ John R. Padova
______________________________
John R. Padova, J.